**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

KENDRA LYNN KREBS,
   Plaintiff,

v.

HOBART TOWNSHIP, INDIANA; and
FRED WILLIAMS, individually and in his official capacity as Hobart Township Trustee;
Defendants.

**Case No.** _____

# COMPLAINT AND JURY DEMAND

# PRELIMINARY STATEMENT

Plaintiff Kendra Lynn Krebs brings this action against Hobart Township, Indiana, and Defendant Fred Williams individually and in his official capacity as Hobart Township Trustee, for violations of her rights under the First and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. § 1983, and for violations of the Indiana Whistleblower Law, I.C. § 36-1-8-8.

Plaintiff, a young gay woman, was subjected throughout her employment to a pervasive work environment hostile to women and gay employees: her supervisor directed personally sexually explicit and homophobic commentary at her; a male Township official repeatedly exposed himself in the common areas of the office; and a male coworker — shielded by Williams' personal friendship and political loyalty — made Plaintiff physically uncomfortable through uninvited touching and intimidating presence. When Plaintiff and her coworkers raised these complaints, Williams punished them for doing so.

1

Williams further targeted Plaintiff because she engaged in lawful off-duty political speech and association supporting candidates he opposed. Williams then retaliated against Plaintiff for her personal witnessing of and opposition to his misuse of Township credit accounts, Township employees' work time, and other public resources for his personal benefit. After years of discriminatory treatment, public humiliation, and escalating retaliation, Williams publicly ordered Plaintiff to "shut up or go home" in front of a client, then called police to have her physically removed from the workplace when she reported the next morning. Plaintiff seeks all available relief for these constitutional and statutory violations.

## JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)–(4), as this action arises under 42 U.S.C. §§ 1983 and 1988 and the First and Fourteenth Amendments to the United States Constitution.

2. This Court has supplemental jurisdiction over Plaintiff's Indiana Whistleblower claim pursuant to 28 U.S.C. § 1367(a), as that claim forms part of the same case or controversy as Plaintiff's federal claims.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Defendant Hobart Township is located in Lake County, Indiana, within the Hammond Division of the Northern District of Indiana, and all events giving rise to this action occurred within this district.

## PARTIES

4. Plaintiff Kendra Lynn Krebs is a resident of Lake County, Indiana, residing in Gary, Indiana. At all times relevant to this Complaint, Plaintiff was employed by Hobart

Township as a Clerk/Assistant at the Hobart Township Trustee's Office, 1421 37th Avenue, Hobart, Indiana 46342.

5. Defendant Hobart Township, Indiana ("the Township") is a governmental entity organized and existing under Indiana law, with its principal office at 1421 37th Avenue, Hobart, Indiana 46342. At all relevant times, the Township was Plaintiff's employer and acted under color of state law.

6. Defendant Fred Williams ("Williams") is, and at all times relevant herein was, the duly elected Hobart Township Trustee. Williams exercised final and exclusive policymaking authority over all Township personnel matters, including the power to set hours, grant or deny wages, assign duties, and terminate employment. Williams is sued in his individual capacity and in his official capacity as Hobart Township Trustee.

# FACTUAL ALLEGATIONS

## A. Background and Employment

8. Plaintiff was hired by Hobart Township as a Clerk/Assistant on or about October 31, 2022, at a wage of $16.28 per hour. Plaintiff performed her job duties competently and professionally throughout her employment.

9. Plaintiff is a gay woman. Her sex, sexual orientation, and the identity of her same-sex partner were known to Defendant Williams and to other Township employees throughout her employment.

10. Defendant Williams, as Hobart Township Trustee, exercised complete and final supervisory and disciplinary authority over Plaintiff and all Township employees,

including the exclusive power to set hours, grant or deny raises, assign duties, and terminate employment.

## B. Hostile Work Environment Based on Sex and Sexual Orientation — Williams

12. During the times relevant to these claims, Defendant Williams created and maintained a work environment that was hostile to women and to gay employees. Williams bragged about his conquests with other women in earlier years, and made crude, derogatory remarks about female employees. Williams made these remarks while refusing to use his private office — positioning himself instead in the open common area of the office to ensure the all-female staff had no ability to avoid his conduct, which he continued even when clients were present at the service window.

13. When Plaintiff wore her hair to work in a slicked back ponytail, Williams asked Plaintiff, in substance, whether her girlfriend gets behind her and pulls here hair--a comment directed at Plaintiff personally because of her sex and sexual orientation that was offensive, demeaning, and humiliating.

14. Williams regularly tolerated racist and homophobic jokes in the workplace, often in the presence of clients at the service window. Williams acknowledged his own conduct by stating that he needed to "unlearn" this behavior, because that was the era he grew up in.

15. On or about August 29, 2024, a visitor to the Township office, related to a former trustee, who regularly visited the office — made a series of homophobic jokes directed at or in the presence of Plaintiff. Defendant Williams laughed at the jokes, signaling approval and condoning the conduct. When Plaintiff raised the incident with Williams, he offered only a superficial apology but simultaneously excused this individual's conduct entirely by

stating, "that's just how [he] is" — communicating clearly that homophobic conduct directed at Plaintiff was tolerated and would not be addressed.

16. Williams regularly instructed Plaintiff to suppress her objections to this environment, telling her to "smile more" and to "be sweet" — directives Williams delivered even while Plaintiff was crying.

## C. Hostile Work Environment — An Employee's Indecent Exposure and Williams' Response

17. Another township employee held a practice of delivering a daily "joke of the day" in the Township office consisting of racist, homophobic, and anti-gay content. Williams regularly laughed at and joined in these jokes rather than addressing or stopping them.

18. This particular employee had a further practice of using the Township bathroom with both doors open while urinating, in a manner that allowed Plaintiff, and other office staff to hear and observe him. The bathroom was located in a common area of the office, accessible to all staff. Plaintiff complained to Williams about this conduct on multiple occasions.

19. Rather than addressing the complaint, Williams told Plaintiff and another office employee that they should "take care of it" themselves. When it was expressed that she/they were uncomfortable confronting a grown man about such conduct, the matter was left entirely unaddressed.

20. Williams' response to Plaintiff's subsequent complaint was to tell her, in substance, that the next time this male employee urinated with the door open she should joke about the size of his genitals rather than complaining. This response dismissed Plaintiff's serious

complaint with a sexually demeaning directive that reflected Williams' wholesale indifference to the sexual dignity of his female employees.

21. On or about October 24, 2025, after the matter remained unaddressed, Plaintiff directly confronted the employee, asking him to close the bathroom doors. The employee responded angrily, stating "this is bullshit," stormed out of the office, returned approximately one hour later, surrendered his key, stated "I quit," and left.

22. Defendant Williams then called the office. Williams could be overheard screaming that Plaintiff had no right to say anything to the employee (about the bathroom/exposure situation) because she was "a nobody in the office." Williams then returned to the office and berated Plaintiff for having complained — reducing Plaintiff to tears — while simultaneously telling her to "be a sweet person."

## D. Hostile Work Environment and Quid Pro Quo — former employee John Long

22. John Long ("Long"), the Township's Parks Manager, had a practice of arriving at the Township office in the early morning hours and sitting in the office with all lights off, waiting for Plaintiff and the other female office staff to arrive for the day. Park department employees, including Long, had their own separate office at Rosser Park and had no legitimate reason to occupy the main Township office — let alone to do so in the dark before staff arrived. Plaintiff and other female employees found this practice unsettling and threatening, and reported this to their direct report and Fred.  Fred would make excuses and not take action.  Female employees would wait for each other to arrive to work in these instances, to walk in together.

23. Long engaged in unwanted physical contact toward Plaintiff, including squeezing her shoulders and placing his hands on her waist in a manner that invaded her physical space and made her deeply uncomfortable. Long routinely stood next to Plaintiff while she was seated and would lift his shirt to expose his abdomen in the faces of female staff. Plaintiff pulled away from interaction with Long because Long made her physically uncomfortable. Plaintiff verbally made it known that she was upset and demeaned and uncomfortable with this inappropriate behavior.

24. On or about August 19, 2024, in direct response to Plaintiff's refusal to engage warmly with Long following his conduct, Williams pulled another female superior aside and directed her to speak with Plaintiff about having an "attitude" toward Long and to tell Plaintiff she needed to be "nice to John Long." This directive — delivered to a third party rather than to Plaintiff directly — was a coercive communication that Plaintiff was expected to suppress her objections to Long's sexual and inappropriate conduct as a condition of avoiding further adverse treatment.

25. On or about April 16, 2024, Williams stormed into the Township office and confiscated the signature stamps of Plaintiff and all office staff, stating explicitly that the stamps would be returned when staff was "nicer to John." Plaintiff was present and directly subjected to this directive. By wielding coercive authority over Plaintiff's employment tools and conditioning their return on Plaintiff's acceptance of Long's conduct, Williams imposed a sex-based condition on the terms and privileges of Plaintiff's employment.

26. Plaintiff was also reprimanded by Williams for her refusal to interact warmly with Long — a person who displayed sexual and inappropriate touching and behavior and who made her physically uncomfortable.  Plaintiff was told that Long and the male referenced

in section "C" had complained that she was "mean" because she declined to engage with them. Williams thus imposed an affirmative obligation on Plaintiff to engage congenially with the very individuals whose conduct she was attempting to avoid.

## E. Discriminatory Denial of Raise and Retaliatory Reduction in Hours

27. In or about September 2024, Williams denied Plaintiff a wage increase. Williams cited as his justification that Plaintiff had failed to attend a three-day training. Plaintiff was unable to attend the training due to lack of childcare for her daughter—and the fact that she **had to care for her child.**

28. The stated justification was pretextual. In 2025, for the same training, a Male Board Member also missed the same training —but was excused because **he had no one to watch his chickens** — yet this male employee received his raise without consequence. Williams did not impose the same penalty on a similarly situated male employee under identical or comparable circumstances.

29. To further manufacture pretextual grounds for denying Plaintiff's raise, a coworker forged Plaintiff's signature on a training declination list, falsely representing that Plaintiff had voluntarily declined the training. Williams used this forged document as grounds to deny Plaintiff's raise and did not investigate the forgery. The female Chief Deputy was also denied a raise under the same circumstances. No male employees who missed the same training were similarly denied raises. There is nothing in the employee handbook mandating this training, either.

30. Williams also cut Plaintiff's scheduled hours from 40 per week to 25 per week in September 2024 — a 37.5% reduction — as punishment for Plaintiff's complaints and her

failure to comply with Williams' demands. No comparable reduction was imposed on male employees.

31. Williams had previously stated to Plaintiff that he wanted her to attend the training so that she would drink and get drunk and have fun — a statement that itself reflects the sexual animus underlying his treatment of Plaintiff and further demonstrates the pretextual character of the training-based justification for denying her raise.

## F. First Amendment Political Retaliation

32. Plaintiff engaged in constitutionally protected political speech and association as a private citizen. Using her personal device during non-work hours, at home, at night, Plaintiff "hearted" a social media post by former Township employee Dianna Brooks announcing her candidacy for a Hobart Township Board seat. This activity was undertaken entirely outside of work, on Plaintiff's personal device, and had no connection to Plaintiff's employment duties.

33. A Township Board individual subsequently took a screenshot of Plaintiff's social media activity and reported it to Williams. Williams became aware of Plaintiff's social media activity and suspected Plaintiff of involvement in political postcards mailed to the public during an election campaign involving Williams and his political allies.

34. Following his discovery of Plaintiff's political activity, Williams expressed open distrust of Plaintiff, referred to Plaintiff and another female employee using code names "Girl 1" and "Girl 2" while speaking on the phone with a Board Member about Plaintiff in discussions about politics and the election, and made clear that he could not trust someone in the office — comments directed at Plaintiff

35. In response to his discovery of Plaintiff's off duty "political" activity, Williams targeted Plaintiff with materially adverse employment actions:

    a.  he assigned Plaintiff demeaning tasks not within her job description — such as cleaning the carpet and moving boxes — expressly because she was "the one who is causing trouble";

    b.  he refused to restore the signature stamp he had confiscated;

    c.  he escalated public humiliation of Plaintiff at the service window;

    d.  and he ultimately engineered Plaintiff's constructive discharge on February 19–20, 2026.

36. Following Plaintiff's discharge, Williams used social media to publicly "heart" a negative comment about Plaintiff, conduct that further demonstrates Williams' sustained and personal retaliatory animus.

## G. Plaintiff's Witnessing and Opposition to Illegal Misuse of Public Resources

38. Throughout her employment, Plaintiff was a direct witness to personal misuse of Township resources, Township employee work time, and Township funds.

39. On or about **November 21, 2025**, Plaintiff witnessed a Township park employee — on Township work time, during regular working hours — being directed by Williams to travel to Williams' personal residence and perform leaf-blowing of Williams' personal yard.

40. On or about **December 2, 2025**, this park employee told Plaintiff that he and Williams had gone to Menards and purchased a battery for Williams' personal golf cart using a Township debit card. The battery did not work, and they returned to exchange it — making two personal-purpose trips on Township time with Township funds.

41. On or about **January 7, 2026**, at approximately 2:40 p.m., Williams directed the park employee to accompany him, on Township work time, to the home of a then current Township assistance client — to purchase a personal firearm from the client for cash. Upon information and belief, Williams instructed the client not to mention the cash transaction to the Township. The client subsequently applied for Township assistance the following month and did not disclose any income for January — the month the cash transaction occurred — suggesting the conduct implicated both Williams' personal financial misconduct and the integrity of the Township's public assistance program.

42. On or about **August 13, 2025**, Plaintiff witnessed Williams solicit a Township workfare client for personal cash side jobs on weekends — while the client was simultaneously claiming no income for purposes of Township assistance eligibility, an arrangement that reflected a corrupt quid pro quo between Williams and a Township recipient that misused both client services and Township assistance funds.

43. Plaintiff witnessed and documented the foregoing actions as a Township employee without a supervisor she could safely report to, given that Williams was both the perpetrator and the only supervisory authority in the office. Plaintiff's witnessing of, proximity to, and implicit opposition to these activities constituted protected activity. Williams' awareness that Plaintiff had witnessed these events — and that her continued presence in the office posed a risk of disclosure — was a material factor motivating her constructive discharge.

## H. Constructive Discharge — February 19–20, 2026

45. On or about **February 19, 2026**, while Plaintiff was assisting a female client at the Township service window, Williams publicly and loudly accused Plaintiff of not performing her duties correctly in front of the client.

46. When Plaintiff attempted to explain that the client had not yet provided the needed information and would return, Williams repeatedly pointed at her and said, "shut up and take care of the client," and then stated, "shut up or go home." A client at the service window witnessed this interaction and expressed sympathy to Plaintiff as she left.

47. Given the cumulative pattern of targeting, hostility, public humiliation, and escalating retaliation Plaintiff had experienced — and Williams' explicit directive to leave — a reasonable person in Plaintiff's position would have felt compelled to treat the directive as a termination. Plaintiff gathered her purse and left the premises at approximately 3:15 p.m., attempting to remain calm and avoid further conflict. Plaintiff did not quit.

48. The following morning, February 20, 2026, Plaintiff returned to the workplace at 7:59 a.m. Williams arrived at approximately 8:15 a.m., pointed at Plaintiff, and claimed she had quit by walking out the day before. Plaintiff denied this and stated she had followed Williams' direction to leave. Another female employee directly confirmed to Williams' face, in his presence, that Williams had told Plaintiff to "shut up or go home." Williams laughed and stated that Plaintiff had "walked out to make it his fault."

49. Williams then called 911 at 8:28 a.m. — a call that was recorded. Two Hobart Police officers arrived and informed Plaintiff that the matter was civil in nature and that she

needed to leave. Plaintiff surrendered her key and stated she had not resigned. She was nevertheless forced to leave the premises.

50. Plaintiff's employment was effectively terminated as of February 19–20, 2026. Williams' use of law enforcement to physically compel Plaintiff's departure from her own workplace — while Williams had directed her to leave the day before — constitutes constructive discharge and a final, formal retaliatory act.

## I. Township Liability — Final Policymaker

50. Defendant Hobart Township is liable for all constitutional and statutory violations described herein because every act of deliberate indifference, quid pro quo retaliation, discriminatory denial of compensation, political retaliation, whistleblower retaliation, and constructive discharge was carried out by Williams, the duly elected Hobart Township Trustee and the Township's final policymaker on all employment matters. Williams' conduct was, as a matter of law, the official policy of the Township.

51. The Township's complete absence of any anti-harassment policy, any anti-retaliation policy, any mechanism for reporting complaints about the Trustee's own conduct, and any avenue for relief for employees whose complaints the Trustee himself refused to remedy constituted deliberate indifference to the known constitutional and statutory rights of female employees, including Plaintiff.

# CAUSES OF ACTION

## COUNT I — 42 U.S.C. § 1983: FIRST AMENDMENT RETALIATION — POLITICAL SPEECH AND ASSOCIATION *(Against Defendant Fred Williams, Individually and in His Official Capacity, and Against Hobart Township)*

52. Plaintiff incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

53. At all relevant times, Plaintiff engaged in speech and political association protected by the First Amendment to the United States Constitution. Plaintiff's "hearting" of a political candidate's social media post on her personal device, during non-work hours, at home, addressed a matter of public concern — the conduct and leadership of a local elected government official — and was undertaken as a private citizen entirely outside of her employment duties. Plaintiff's political associations, including her family's political participation and her own civic identity, are likewise fully protected.

54. Defendant Williams, acting under color of state law, took materially adverse employment actions against Plaintiff motivated in substantial part by her protected First Amendment activity: he assigned Plaintiff demeaning tasks as explicit punishment; he denied Plaintiff a raise while granting the same raise to a similarly situated male employee; he reduced Plaintiff's hours by 37.5%; he referred to Plaintiff using demeaning "Girl 1" and "Girl 2" coded names in political conversations with Board members; he publicly humiliated Plaintiff at the service window; he called law enforcement to have Plaintiff physically removed from her workplace; and he ultimately constructively discharged her.

14

55. Williams' retaliatory conduct — including calling law enforcement to confront Plaintiff at her place of employment in the context of political animus — would deter a person of ordinary firmness from exercising constitutionally protected speech and association.

56. Williams' post-discharge social media activity — publicly "hearting" negative content about Plaintiff after her departure — further confirms the personal and retaliatory character of the conduct.

57. Defendant Hobart Township is directly liable because Williams was the Township's final policymaker, rendering his retaliatory acts the official policy and custom of the Township.

58. Williams' conduct was intentional, willful, malicious, and carried out with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to punitive damages against Williams in his individual capacity.

59. As a direct and proximate result, Plaintiff has suffered lost wages and benefits, emotional distress, humiliation, and other compensatory damages.

60. Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to an award of reasonable attorney's fees and costs.

## COUNT II — 42 U.S.C. § 1983: FOURTEENTH AMENDMENT EQUAL PROTECTION — SEX AND SEXUAL ORIENTATION DISCRIMINATION *(Against Defendant Fred Williams, Individually and in His Official Capacity, and Against Hobart Township)*

61. Plaintiff incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

62. The Equal Protection Clause of the Fourteenth Amendment prohibits state actors from intentionally discriminating against individuals on the basis of sex and sexual orientation in the terms and conditions of public employment.

63. Defendant Williams, acting under color of state law and as the Township's final policymaker, intentionally discriminated against Plaintiff on the basis of her sex and sexual orientation by: directing a personal sexually explicit comment at Plaintiff targeting her same-sex relationship (girlfriend pulling ponytail"; tolerating and condoning homophobic jokes directed at Plaintiff while taking no corrective action; dismissing Plaintiff's sexual harassment complaint about a male employee with a sexually demeaning directive; denying Plaintiff a wage increase while granting the same raise to a similarly situated male board member who missed the same training; reducing Plaintiff's hours without applying comparable reductions to male employees; relying on a forged document as pretext for adverse action against Plaintiff; and ultimately constructively discharging Plaintiff.

64. Williams treated similarly situated male employees —more favorably in all material respects and employed forged documentation and pretextual justifications to disguise the discriminatory character of his conduct.

65. Defendant Hobart Township is directly liable because Williams was the Township's final policymaker, rendering his discriminatory acts the official policy and custom of the Township.

66. Williams' conduct was intentional, willful, and malicious, entitling Plaintiff to punitive damages against Williams in his individual capacity.

67. As a direct and proximate result, Plaintiff has suffered lost wages and benefits, emotional distress, humiliation, and other compensatory damages.

68. Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to an award of reasonable attorney's fees and costs.

## COUNT III — 42 U.S.C. § 1983: FOURTEENTH AMENDMENT EQUAL PROTECTION — HOSTILE WORK ENVIRONMENT BASED ON SEX AND SEXUAL ORIENTATION *(Against Defendant Fred Williams, Individually and in His Official Capacity, and Against Hobart Township)*

69. Plaintiff incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

70. The Equal Protection Clause of the Fourteenth Amendment prohibits state actors from deliberately creating or maintaining a work environment so hostile to employees on the basis of sex and sexual orientation as to deny them equal access to the conditions and benefits of their employment.

71. Defendant Williams, acting under color of state law and as the Township's final policymaker, deliberately created, maintained, and perpetuated a hostile work environment based on sex and sexual orientation through: directing a personally targeted sexual comment at Plaintiff about her same-sex intimate relationship; making repeated sexually explicit and demeaning comments to the all-female office staff; condoning homophobic jokes directed at Plaintiff and then excusing the perpetrator; responding to Plaintiff's legitimate complaint about indecent exposure with a sexually demeaning directive; berating Plaintiff for complaining about the exposure; protecting and defending Long — who made Plaintiff physically uncomfortable through unwanted touching and intimidating conduct — while directing Plaintiff to engage warmly with him; conditioning Plaintiff's employment tools on her willingness to tolerate Long's conduct; and engaging in a sustained campaign of gender-based targeting, humiliation, and retaliation.

72. The hostile environment was severe and pervasive, extended throughout Plaintiff's employment, and was the product of deliberate choices by the Township's own final policymaker —Fred Willaims-- rendering the Township directly liable.

17

73. Williams' conduct was intentional, willful, and malicious, entitling Plaintiff to punitive damages against Williams in his individual capacity.

74. As a direct and proximate result, Plaintiff has suffered lost wages, emotional distress, humiliation, and other compensatory damages.

75. Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to an award of reasonable attorney's fees and costs.

## COUNT IV — 42 U.S.C. § 1983: FOURTEENTH AMENDMENT EQUAL PROTECTION — QUID PRO QUO SEX DISCRIMINATION*(Against Defendant Fred Williams, Individually and in His Official Capacity, and Against Hobart Township)*

76. Plaintiff incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

77. The Equal Protection Clause of the Fourteenth Amendment prohibits state actors from imposing sex-based conditions on a female employee's continued access to the tools, compensation, and benefits of her employment.

78. Defendant Williams, acting under color of state law, conditioned the restoration of Plaintiff's employment tools — including her signature stamp — on Plaintiff's acquiescence to Long's conduct and her willingness to engage warmly with a person whose uninvited touching and presence made her physically uncomfortable. Williams stated explicitly that the stamps would be returned when staff was "nicer to John." Plaintiff was present and directly subjected to this directive. Williams further conditioned Plaintiff's job security on her compliance, directing another employee to communicate to Plaintiff that she needed to modify her behavior toward Long or face continued adverse treatment.

18

79. By wielding coercive supervisory authority to impose sex-based conditions on Plaintiff's continued access to her employment tools and on her continued employment, Williams engaged in quid pro quo sex discrimination in violation of the Equal Protection Clause.

80. Defendant Hobart Township is directly liable because Williams was the Township's final policymaker, rendering these acts the official policy and custom of the Township.

81. Williams' conduct was intentional, willful, and malicious, entitling Plaintiff to punitive damages against Williams in his individual capacity.

82. As a direct and proximate result, Plaintiff has suffered deprivation of employment tools, denial of wages, and other compensatory damages.

83. Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to an award of reasonable attorney's fees and costs.

## COUNT V — 42 U.S.C. § 1983: FOURTEENTH AMENDMENT EQUAL PROTECTION — RETALIATORY CONSTRUCTIVE DISCHARGE
### *(Against Defendant Fred Williams, Individually and in His Official Capacity, and Against Hobart Township)*

84. Plaintiff incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

85. Plaintiff engaged in constitutionally protected activity by complaining about the sexually hostile work environment, the homophobic conduct she was subjected to, the indecent exposure by a Township employee, and the quid pro quo conduct directed at her — all protected under the Equal Protection framework of the Fourteenth Amendment.

86. In direct response to Plaintiff's protected complaints and her protected political speech, Williams imposed materially adverse employment actions culminating in constructive discharge: he denied Plaintiff a raise on pretextual grounds supported by a forged document; he reduced her hours by 37.5%; he publicly humiliated her in front of clients;

he berated her on audio recording; he directed a demeaning code-name-based political conversations about Plaintiff with a Board member; he assigned her demeaning tasks as explicit punishment; he told her to "shut up or go home" in front of a client; and on the following day, he called 911 and had police respond to physically remove her from her workplace.

87. Williams' working conditions were objectively intolerable: a reasonable person subjected to years of sexual and homophobic harassment, retaliation for every complaint, public humiliation at the service window in front of clients, the confiscation of employment tools, a 37.5% reduction in hours, the use of a forged document to deny wages, and ultimately the calling of law enforcement to compel physical removal from the workplace would feel compelled to leave. Plaintiff's departure on February 19, 2026, was not voluntary.

88. Defendant Hobart Township is directly liable because Williams was the Township's final policymaker, rendering the constructive discharge the official act of the Township.

89. Williams' conduct was intentional, willful, and malicious, entitling Plaintiff to punitive damages against Williams in his individual capacity.

90. As a direct and proximate result, Plaintiff has suffered lost wages and benefits, emotional distress, humiliation, and other compensatory damages.

91. Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to an award of reasonable attorney's fees and costs.

## COUNT VI — 42 U.S.C. § 1983: FOURTEENTH AMENDMENT EQUAL PROTECTION — DIRECT SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT (*Hobart Township*)

92. Plaintiff incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

20

93. At all relevant times, John Long was employed as Parks Manager for Hobart Township and acted under color of state law. Long used his status as a Township employee — including his access to the Township office, his use of Township work time, and his relationship with Trustee Williams — to carry out a course of conduct that made the Township workplace physically hostile to Plaintiff as a female employee.

94. The Equal Protection Clause of the Fourteenth Amendment prohibits state actors from intentionally subjecting persons to sex-based discrimination. A public employee who uses the authority and access of his state employment to engage in sustained, sex-based physical harassment of a coworker — and who operates with the actual and apparent protection of the employing government's final policymaker — acts under color of state law.

95. Defendant Long engaged in a pattern of unwanted and offensive physical conduct toward Plaintiff, including squeezing her shoulders and placing his hands on her waist in a manner that invaded her personal space and made her physically uncomfortable; standing next to Plaintiff at close range and lifting his shirt to expose his abdomen in the faces of female staff; and engaging in threatening, intimidating conduct including sitting in the darkened office — without any legitimate work purpose — in the early morning hours waiting for the female office staff to arrive, a practice Plaintiff found deeply unsettling and threatening.

96. Long operated with complete impunity because Williams — the Township's final policymaker — actively and repeatedly shielded Long from accountability, defended his conduct to Plaintiff, and punished Plaintiff and her coworkers for objecting to Long's presence and behavior. Long was aware of and relied upon Williams' protection in

continuing his conduct. The August 19, 2024, incident — in which Williams directed another female employee to communicate to Plaintiff that she must be "nicer to John" following Plaintiff's attempts to maintain distance from Long — directly enabled and encouraged Long's continued intrusive presence in the office.

97. Long's intentional and sustained pattern of unwanted physical contact and intimidating conduct toward Plaintiff constituted sex-based discrimination that denied Plaintiff equal access to the conditions of her public employment, in violation of the Equal Protection Clause of the Fourteenth Amendment.

98. Long's conduct was intentional, willful, and malicious.

99. *Hobart Township,* as the employer of Long is liable for John Long's behavior, which was condoned and perpetuated by Williams, via respondeat superior.

100. As a direct and proximate result, Plaintiff has suffered emotional distress, humiliation, loss of dignity, a physically threatening and hostile work environment, and other compensatory damages.

101. Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to an award of reasonable attorney's fees and costs.

## COUNT VII — 42 U.S.C. § 1983: FIRST AMENDMENT RETALIATION — REPORTING AND OPPOSITION TO ILLEGAL USE OF PUBLIC RESOURCES*(Against Defendant Fred Williams, Individually and in His Official Capacity, and Against Hobart Township)*

101. Plaintiff incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

102. The First Amendment, applied to state actors through the Fourteenth Amendment, protects public employees who speak as citizens on matters of public concern from

retaliation by their government employers. The witnessing and reporting of illegal misappropriation of public funds, government employee work time, and Township credit accounts for a public official's personal benefit constitutes speech on a matter of significant public concern.

103. Plaintiff, acting as a citizen witness within the Township office, observed and was aware of Williams' repeated personal misuse of Township resources — including the direction of a Township employee to perform personal lawn maintenance at Williams' private residence on Township work time (November 21, 2025); the use of a Township credit card to purchase a golf cart battery for Williams' personal use (December 2, 2025); and Williams' departure during Township work hours to purchase a personal firearm from a Township assistance client, with instructions to that client to conceal the cash transaction from the Township (January 7, 2026).

104. Plaintiff's knowledge of these incidents, her documented proximity to them, and her implicit opposition to and non-participation in Williams' misuse of public resources placed Williams on notice that Plaintiff posed a risk of disclosure of his misconduct. This awareness — combined with Plaintiff's association with former employee Dianna Brooks, whose documented complaints about Long's financial misconduct had directly threatened Williams' interests — further heightened Williams' retaliatory motivation to remove Plaintiff from the office.

105. Plaintiff's speech and implicit opposition related to Williams' misuse of public resources addressed matters of undisputed public concern: the unauthorized personal use of taxpayer-funded employment time and Township credit accounts by a duly elected public

23

official constitutes a matter of legitimate public interest that outweighs any government interest in suppressing Plaintiff's knowledge of or opposition to it.

106. Defendant Williams, acting under color of state law, retaliated against Plaintiff in substantial part because of her knowledge of and opposition to his misuse of public resources: he escalated adverse employment actions against Plaintiff during the same period in which these incidents occurred (late 2025 through early 2026); he publicly berated and humiliated Plaintiff at the service window; and he ultimately called law enforcement to physically remove Plaintiff from the office — effectively terminating the employment of the witness to his misconduct.

107. Defendant Hobart Township is directly liable because Williams was the Township's final policymaker, rendering his retaliatory acts the official policy and custom of the Township.

108. Williams' conduct was intentional, willful, and malicious, entitling Plaintiff to punitive damages against Williams in his individual capacity.

109. As a direct and proximate result, Plaintiff has suffered lost wages and benefits, emotional distress, and other compensatory damages.

110. Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to an award of reasonable attorney's fees and costs.

## COUNT VIII — INDIANA WHISTLEBLOWER LAW, I.C. § 36-1-8-8: RETALIATION FOR REPORTING ILLEGAL CONDUCT *(Against Defendant Hobart Township)*

111. Plaintiff incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

112. Indiana Code § 36-1-8-8 prohibits a political subdivision from taking adverse employment action against an employee who in good faith reports to a supervisor or other

24

appropriate official a violation of a federal law, state law, or an ordinance or regulation of the political subdivision.

113. Plaintiff is an employee of Hobart Township, a political subdivision of the State of Indiana.

114. Plaintiff in good faith reported and opposed Defendant Williams' misuse of Township resources. Plaintiff's witnessing of and implicit opposition to Williams' use of a Township debit card for personal purchases, his direction of Township employees to perform personal work at his private residence on Township time, and his departure during work hours to conduct personal transactions with Township assistance clients identified conduct constituting violations of Indiana law governing the faithful performance of public official duties, the prohibition against conversion of public property to personal use, and the regulations governing the proper administration of Township assistance.

115. These reports were made to and within the observation of Williams himself — the Township's only supervisory authority. The Township had no alternative reporting mechanism for reporting misconduct by the Trustee himself, leaving Plaintiff with no avenue for formal disclosure short of reporting to an external authority — which Williams' hostile and retaliatory conduct actively deterred.

116. Following the period during which Plaintiff was a witness to this misconduct, Williams escalated his retaliatory conduct: he escalated public humiliation of Plaintiff; he intensified adverse employment conditions; he publicly ordered Plaintiff to leave the workplace; and he called law enforcement to have Plaintiff physically removed from the office on February 20, 2026 — effectively terminating the employment of the very witness to his misconduct.

117. A causal connection exists between Plaintiff's proximity to and implicit opposition to Williams' illegal use of public resources and the adverse actions imposed upon her. The escalating pattern of retaliation during and immediately following the period in which Plaintiff witnessed these events, culminating in constructive discharge, establishes that her witnessing and opposition were a substantial and motivating factor in the adverse actions.

118. As a direct and proximate result of Defendant Hobart Township's violation of I.C. § 36-1-8-8, Plaintiff has suffered lost wages and benefits, emotional distress, and other compensatory damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kendra Lynn Krebs respectfully requests that this Court enter judgment in her favor and against Defendants as follows:

a. A declaration that Defendants' conduct violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution and the Indiana Whistleblower Law, I.C. § 36-1-8-8;

b. Compensatory damages for all lost wages and employment benefits, past and future, including back pay and front pay, in an amount to be proven at trial;

c. Compensatory damages for emotional distress, humiliation, loss of dignity, and other non-economic harm, in an amount to be proven at trial;

d. Punitive damages against Defendant Fred Williams in his individual capacity pursuant to 42 U.S.C. § 1983, in an amount sufficient to punish and deter his intentional and malicious misconduct;

e. Punitive damages against Defendant John Long in his individual capacity pursuant to 42 U.S.C. § 1983, in an amount sufficient to punish and deter his intentional and malicious misconduct;

f. Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and I.C. § 36-1-8-8;

g. Pre- and post-judgment interest; and

h. Such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Robin G. Remley*
ROBIN G. REMLEY (22517-45)
Attorney for Plaintiff
Law Office of Robin Remley LLC
123 N. Main St. Suite 204-C
Crown Point, IN 46307
(219) 756-9600
fax: (866) 922-3497

# JURY DEMAND

Plaintiff Kendra Lynn Krebs hereby demands a trial by jury on all issues so triable.

*/s/ Robin G. Remley*
ROBIN G. REMLEY (22517-45)
Attorney for Plaintiff
Law Office of Robin Remley LLC
123 N. Main St. Suite 204-C
Crown Point, IN 46307
(219) 756-9600
fax: (866) 922-3497